AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means



# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 3:20SW85 |
| Rose Gold IPHONE XS MAX, IMEI 357275099020411 | ) |
| | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Eastern_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C.  §§ 846 | Conspiracy to possess with intent to distribute controlled substances |
| Title 21 U.S.C.  §§ 841(a)(1) | Possession with intent to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's Signature*

Roderick Herndon, ATF Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____Telephone_____ *(specify reliable electronic means).*

Date: 3/24/2020

*Judge's signature*

City and state: Richmond, VA

Roderick C. Young
United States Magistrate Judge
*Printed name and title*



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONE WITH IMEI 357275099020411 RECOVERED FROM THE AMELIA COUNTY SHERIFF'S OFFICE, AND CURRENTLY LOCATED IN THE EVIDENCE VAULT AT 1011 BOULDER SPRINGS DRIVE, SUITE 300, CHESTERFIELD, VA | Case No. 3:20SW85 <br><br> **Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Roderick A. Herndon Jr, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since May 2017. My law enforcement and legal training consist of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in the summer of 2017, and the Special Agent Basic Training at the ATF National Academy in the fall of 2017. I received specialized training at the academy concerning

violations of the Gun Control Act within Title 18 of the United States Code.  During my tenure as an ATF agent, I have initiated and helped conduct criminal investigations including, federal firearms licensee burglaries, firearms and narcotics trafficking, and possession of firearms by prohibited persons.   I have authored multiple search warrants and have testified before federal court and grand jury as a fact witness.  Prior to attending ATF Special Agent training, I was a Police Officer with the Greensboro Police Department in Greensboro North Carolina for 6 years.  During my tenure with the Greensboro Police Department, I was stationed in patrol and conducted various types of investigations including, narcotics violations, homicides, sexual assaults, etc.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The DEVICE to be searched is a rose gold Apple IPhone, model XS Max, IMEI# 357275099020411 ("DEVICE").

5.     The DEVICE is currently located in the evidence vault at the ATF Richmond I Field Office, located at 1011 Boulder Springs Drive, Suite 300, Chesterfield, VA.

6.     The applied-for warrant would authorize the forensic examination of the DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTORY PROVISIONS

7.     Based upon investigative activity conducted to date, further detailed below, I believe a forensic examination of the DEVICE will yield evidence concerning violations of the following federal offenses:

   a.  Conspiracy to distribute or possess with the intent to distribute controlled substances, in violation of Title 21, United States Code 841(a)(1);

   b.  Possession with the intent to distribute controlled substances, in violation of Title 21, United States Code 841(a)(1).

## PROBABLE CAUSE

8.     On October 22, 2019, at approximately 1903 hours the Amelia County Sheriff's Office received a 911 call in reference to shots fired at the Chula Gas Mart located at 12730 Patrick Henry Hwy, Amelia Court House, Virginia.    Upon arrival to the Chula Gas Mart, Amelia County investigators interviewed witnesses, obtained physical evidence, and reviewed the business's surveillance video.  While viewing the surveillance footage, it was observed that two assailants approached an individual later identified as Eric ROYAL Jr. ("ROYAL") and forcibly removed a red bag from his person.  During the course of removing the red bag from ROYAL, the video depicted multiple clear baggies fall from the bag and scatter about the ground.  The video further recorded a several minute fight between ROYAL and the assailants throughout the parking lot of the Chula Gas Mart.  A canvas of the parking lot by investigators discovered several clear baggies containing 289 purple pills, a clear bag containing suspected marijuana, and 9 mm luger shell casings in the proximity of the incident.  It was also determined

3

from the shell casings and witness interviews that ROYAL or one the two assailants had fired shots during the fight.

9.     Shortly thereafter, investigators were advised by an off-duty Virginia State Trooper that he had observed three black males fighting at the Chula Gas Mart and heard an explosion. The Trooper also stated that during the incident he observed a Glock pistol on the ground dropped by one of the parties. After the subjects stopped fighting, the Trooper stated that the pistol was picked up by one of the individuals and the parties fled the scene in different vehicles. The Trooper further stated that he observed ROYAL get into a gold Toyota Camry displaying VA Registration VPM-7171 and that he followed that vehicle to the residence located at 7220 Dennisville Rd, Amelia Court House, Virginia. The Trooper observed ROYAL exit the vehicle and called for backup.

10.     Shortly thereafter, Amelia County deputies arrived to the 7220 Dennisville Rd residence to assist the Trooper and observed the gold Toyota Camry, VA Registration VPM-7171 at the residence. The deputies further observed ROYAL near the garage of the residence. Upon closer examination of the vehicle, deputies determined that it was registered to ROYAL and saw in plain view on the driver's seat of the vehicle, a black Glock handgun with extra magazines and a red bag.

11.     Based on the discovery of this evidence, Amelia County investigators applied for and obtained a search warrant for the gold Toyota Camry, VA Registration VPM-7171, registered to ROYAL. During the execution of the search warrant, investigators found a Glock handgun, a Glock magazine, a Taurus magazine, a red bag containing clear plastic baggies containing suspected marijuana and purple powder, approximately $200 in cash, digital scales, a

4

metal plant grinder, and various calibers of ammunition. Investigators compared the purple pills and powder and found them both to be of the same shade in color. Investigators then seized the DEVICE from ROYAL's person in that it likely contained evidence of ROYAL's distribution of illegal narcotics.

12.    The purple pills, purple powder, and suspected marijuana were seized and sent to the Virginia Forensic Science Lab for analysis. The lab determined that the purple pills were 76.5 grams of methamphetamine, the purple powder was 15.95 grams of methamphetamine, and the marijuana to be 58 grams. Based on my training and experience, this amount of controlled substances is consistent with the distribution quantities of methamphetamine and marijuana.

13.    In my training and experience, this affiant knows narcotics dealers utilize cellular devices to further their criminal activity. This affiant knows that narcotics dealers utilize cellular devices to conduct calls and text messages with sources of supply and customers; said messages sometimes contain coded drug language by the use of alphanumeric characters, and or emojis. Through information obtained via suspect debriefs and or confidential sources, I have come know that narcotics dealers communicate with other dealers and or drug users through the use of applications "apps" such as, but not limited to Facebook, Snapchat, Instagram, etc. that they access through their cellular devices. Moreover, it is known to me that narcotics traffickers frequently keep copies of ledgers and bank records concerning their narcotics business and photographs of narcotics or firearms on their cellphones.

14.    Based on the aforementioned facts and your affiants training and experience it is believed that the DEVICE contains electronic evidence of the crimes listed including a SIM card,

cell phone contacts, text messages, GPS location, photographs, geo-location information, and communications made by ROYAL in reference to the sale and or use of illegal narcotics.

15.     Based on the foregoing, it is believed the DEVICE seized from ROYAL's person was used to facilitate the sale or transfer of narcotics between ROYAL and narcotics users and or dealers.

## USE OF TELEPHONES BY NARCOTICS USERS AND OR TRAFFICKERS

16.     The forensic examination of the DEVICE will likely identify and provide admissible evidence concerning:

a.  the nature, scope, extent and methods of operation of the illegal narcotics activities in which the suspect(s) and others as yet unknown or not yet fully identified are engaged;

b.  the methods of operation of the suspect(s) including, but not limited to, the means and manner by which individuals are committing and attempting to commit illegal narcotics sales and or purchases;

c.  the identities, roles, and telephone numbers of co-conspirators, accomplices, aiders and abettors, and other participants in such illegal activity;

d.  the existence and location of apartments, residences, businesses and other premises used in the furtherance of the illegal activity;

e.  the existence and location of records of the illegal activity;

f.  the existence, location, and source of resources used in the illegal activity to include firearms and other controlled substances;

g. the existence and location of any other items or means used in furtherance of those activities; and

h. the dates, times, and details of the continued commission of the above-mentioned offenses;

i. the existence and location of any other items or means used in furtherance of those activities; and

j. the dates, times, and details of the continued commission of the above-mentioned offenses.

## **TECHNICAL TERMS**

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

k. **Wireless telephone:** A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing

7

dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

l.  **Tablet:** A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, which is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

m. **Digital camera:** A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

n. **Portable media player:** A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

o. **GPS:** A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

9

p. **PDA**: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

q. **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

r. **SD Card:** A Secure Digital (SD) card is a type of memory card used for storing data in devices such as digital cameras, PDAs, mobile phones, portable music players, and digital voice recorders. SD Cards are generally available with memory capacities between 16 Megabytes and 1 Gigabyte. SD cards can store documents, music, photos, videos, and application data

10

18.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com, https://www.samsung.com, and https://www.lg.com, I know that many of the Devices have capabilities that allow them to perform many of the functions of a computer, typically having a touchscreen interface, internet access, and operating systems capable of running downloaded applications.  Further, they can send and receive text messages, serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and personal digital assistants (PDA).

19.     In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices.  This information can sometimes be recovered with forensics tools.

21.     There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

    a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little

or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

13

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.    *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24.    *Manner of execution.*    Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve

14

the physical intrusion onto premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SPECIFICITY OF SEARCH WARRANT RETURN AND NOTICE
## REGARDING INITIATION OF FORENSIC EXAMINATION

25.     The Government will file a written pleading in this case within one hundred twenty (120) days after the execution of the search warrant notifying the court that the imaging process of digital evidence seized from the target location is complete, and the forensic analysis of computers and media has begun.  Such notice will include confirmation that written notice has been provided to the defendant or his counsel informing the defendant that the forensic examination of evidence seized has actually begun.  Such notice to the defendant and the Court is not intended to mean, and should not be construed to mean, that the forensic analysis is complete, or that a written report detailing the results of the examination to date will be filed with the Court or provided to the defendant or his counsel.  This notice does not create, and is not meant to create, additional discovery rights for the defendant.  Rather, the sole purpose of this notice is to notify the defendant that, beyond the simple seizure of his property, a forensic search of that property has actually begun.

## **CONCLUSION**

26.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICE described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Roderick A. Herndon, Jr.
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me
on March 24, 2020:

_____/s/_____
Roderick C. Young
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

1.      The pieces of property to be searched are one cellular phone, hereinafter the "DEVICE", and are further described as follows:

     a.  A rose gold in color, Apple, IPhone model XS, IMEI# 357275099020411.

2.      The DEVICE is currently located in the evidence vault at the ATF Richmond I Field Office, located at 1011 Boulder Spring Drive, Suite 300, Chesterfield, VA.  This warrant authorizes the forensic examination of the DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the DEVICE described in Attachment A that relate to violations of

conspiracy to distribute controlled substances, in violation of Title 21, United States Code 846;

and possessing with the intent to distribute a controlled substance, in violation of Title 21, United

States Code 841(a)(1), including:

  a. the nature, scope, extent and methods of operation of the illegal narcotics
    activities in which the suspect(s) and others as yet unknown or not yet fully
    identified are engaged;

  b. the methods of operation of the suspect(s) including, but not limited to, the means
    and manner by which individuals are communicating to commit illegal narcotics
    sales and or purchases;

  c. the identities, roles, and telephone numbers of co-conspirators, accomplices,
    aiders and abettors, and other participants in such illegal activity;

  d. the existence and location of apartments, residences, businesses and other
    premises used in the furtherance of the illegal activity;

  e. the existence and location of records of the illegal activity;

  f. the existence, location, and source of resources used in the illegal activity to
    include firearms and other controlled substances;

  g. the existence and location of any other items or means used in furtherance of
    those activities; and

  h. the dates, times, and details of the continued commission of the above-mentioned
    offenses;

2.     Evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2